JS 44 (Rev. 06/...) JHS

**CIVIL COVER SHEET**

17-C-4892

17    4892

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Samira Aani Abarry

**DEFENDANTS** Delta Airlines, Inc.

**(b)** County of Residence of First Listed Plaintiff Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Zakia E Moore
McCain Law, P.C. 1515 Market St, Ste 1200
Philadelphia PA 19102 215-236-1086

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA 42 USC 8 12101, et seq.
Brief description of cause:
Disability and race discrimination

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ in excess of $150,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 10/27/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



# UNITED STATES DISTRICT COURT

**17  4892**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 4235 Haverford Ave #2F, Phila PA 19104

Address of Defendant: 908 Virginia Ave, 4P-F1, Atlanta GA 30354

Place of Accident, Incident or Transaction: Philadelphia Int'l Airport
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☑

Does this case involve multidistrict litigation possibilities?  Yes☐  No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Sakia E. More, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 10/27/2017  _____  86424
Attorney-at-Law  Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/27/2017  _____  86424
Attorney-at-Law  Attorney I.D.#

CIV. 609 (5/2012)

OCT 27 2017

**JHS**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Samira Aani Abarry

                 :

             v.            :

Delta Airlines Inc         :

CIVIL ACTION

**17   4892**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.

| | | |
|---|---|---|
| 10/27/2017 | Zakia E. Moore | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-236-1086 | 215-543-3343 | zmoore@mccain-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT 27 2017

JHS

McCAIN LAW, P.C.
By: Zakia E. Moore, Esquire
Attorney ID No. 86424
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-236-1086
zmoore@mccain-law.com



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIRA AANI ABARRY | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No.: **17 4892** |
| v. | : | **FILED** |
| DELTA AIRLINES, INC | : | OCT 27 2017 |
| | : | KATE BARKMAN, Clerk |
| | : | By_____ Dep. Clerk |
| Defendant. | : | JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

### I. PRELIMINARY STATEMENT

1. Samira Aani Abarry (plaintiff or Ms. Abarry) has had a long career as customer service agent (CSA) for Delta Airlines (Delta) at the Philadelphia International Airport (PHL). She brings this action pursuant to Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, et seq. and (Title VII); the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq.,* and the Pennsylvania Human Relations Act (PHRA), to compensate her for injuries she sustained when Delta discriminated against her by refusing to provide her with a reasonable accommodation for her disability, by treating non-Black employees more favorably in

providing reasonable accommodations and by retaliating against her for seeking an accommodation and asserting her rights under the ADA, Title VII and the PHRA. As a result of Delta's refusal to provide Ms. Abarry with a reasonable accommodation, she has been out of work since September 25, 2015 and placed in an indefinite "inactive duty" status since that time. Due to Delta's illegal actions, Plaintiff has suffered financial losses and emotional distress. She seeks back wages, front pay, pension benefits, and other emoluments of employment which she lost as a result of Defendant's protracted, intentional and illegal employment actions, as well as compensatory damages.

## II.     JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101, (hereafter "ADA"). Jurisdiction is further predicated upon 28 U.S.C. §1331, this being an action arising under the laws of the United States, and 28 U.S.C. §1343. Jurisdiction over the PHRA claim is predicated upon 43 P.S. §962 (c).

3.      All of the actions complained of herein took place within the Eastern District of Pennsylvania, and Defendant Delta maintains business operations therein.

## III.    PARTIES

4.      Plaintiff is a citizen of the United States who resides in Philadelphia, Pennsylvania.

5.      Plaintiff is a qualified individual with a disability as defined by the ADA and the PHRA. Likewise, she is an employee and a person with "non-job-related handicaps" as defined by the PHRA. Plaintiff is also a member of a protected class pursuant to Title VII in that she is Black/African-American and disabled.

6.      Delta Air Lines, Inc. is a major American airline, with its headquarters and

2

largest hub at Hartsfield–Jackson Atlanta International Airport in Atlanta, Georgia. Delta maintains operations out of Philadelphia International Airport (PHL), Terminal D.

7.    Delta employees more than 15 people.

## IV.    ADMINISTRATIVE EXHAUSTION

8.    On or about May 6, 2014, Ms. Abarry filed a Complaint with the Philadelphia Commission on Human Relations (PCHR) alleging that she was constructively discharged because of her disability. Specifically, she alleged that she suffered from depression, insomnia and a stroke. As a result of her disabilities, she took medical leave pursuant to the Family and Medical Leave Act (FMLA). In preparing for her return to work, plaintiff requested an accommodation in the form of a later start time. Delta denied her accommodations request and instead placed her on "inactive status." See PCHR Complaint attached as Exhibit A.

9.    After filing her PCHR Complaint, Ms. Abarry was returned to work on July 3, 2014. Delta never specifically granted her accommodation. Instead it implemented new shift times, applicable to all employees, and she was able to start later due to that change in policy.

10.    On or about January 12, 2016, Ms. Abarry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). That Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). In that Charge, Ms. Abarry alleged a number of bases of discrimination, including race and disability. See EEOC Charge attached as Exhibit B.

11.    Plaintiff's EEOC Charge was investigated and she received a Right to Sue letter dated August 15, 2017. See Right to Sue letter attached as Exhibit C.

12.    The instant lawsuit was filed within the ninety (90) days of her receipt of the Right to Sue letter. Id.

3

## V. **FACTUAL ALLEGATIONS**

13. Ms. Abarry was hired by Delta on March 6, 2007 as a customer service agent (CSA).

14. Generally speaking, a customer service agent can perform a variety of functions, including checking in passengers, document checks, assisting disabled passengers, baggage service, international re-check and gate agent.

15. Upon information and belief, all airports are run differently and CSAs may work in one area exclusively or rotate among different areas. It was the custom in PHL that CSAs bid for and worked exclusively in one area, except baggage service. Consequently, at the Philadelphia International Airport, Delta customer service agents worked in baggage or as a gate agent or at the ticket counter.

16. During her time at PHL, plaintiff worked at the ticket counter approximately 60% of the time. There she checked-in passengers and helped passengers book flights. She spent the remainder of her time working in the baggage service office.

17. A CSA working as a gate agent, among other duties, would operate the jet bridge. A jet bridge is an enclosed, moveable connector which most commonly extends from an airport terminal gate to an airplane. Working with it is considered operating heavy equipment.

18. In 2008, all of the CSAs received training in regards to operating the jet bridge and closing aircraft doors. Other than this training, plaintiff was never required to operate the jet bridge and remained working primarily at the ticket counter.

19. In 2012, plaintiff was on intermittent FMLA leave due to treatment for severe depression.

4

20.     Eventually, plaintiff took an unpaid medical leave of absence from January 2013 through May 2013.

21.     During that medical leave in 2013, she suffered a stroke that caused a visual field defect on her left side.

22.     Plaintiff advised Delta of her stroke via email on or about May 7, 2013.

23.     Plaintiff's physician, Dr. S. Ausim Azizi, also sent a letter dated May 6, 2013 to Annelyse Green in Delta's human resources department advising her of his treatment and her condition.

24.     Eventually, Ms. Abarry returned to work as a CSA working at the ticket counter.

25.     In March 2014, plaintiff began to have attendance issues due to her chronic insomnia and severe depression. As a result, Dion Moncur (Station Manager) suspended her for three (3) weeks to lateness issues.

26.     After the third week, Moncur advised plaintiff that she was no longer suspended but was on "inactive status." No reason was provided for this change in work duty status. Plaintiff remained on inactive status until approximately July 3, 2014.

27.     On or about March 28, 2014, human resources referred Ms. Abarry to the Accommodations Program to assess whether Delta would allow a reasonable accommodation based on her disabilities.

28.     On or about April 4, 2014, plaintiff requested a delayed start time due to her chronic insomnia.

29.     Additionally, Dr. David A. Cohen provided a letter dated April 4, 2014 where he advised that plaintiff was able to work and recommended a delayed start time.

5

30.     During this time period, Delta was placed on notice that plaintiff was not recommended to use heavy equipment, i.e. the jet bridge, due to her visual field defect. Specifically, Ms. Abarry provided a note from Dr. Keith Mathers to Elba Gonzalez in May 2014 stating that plaintiff should not use heavy equipment. Ms. Gonzalez forwarded the note to Delta's human resources department in Atlanta, Ga. In August 2014, Lilton McGee, stated that there was no such note in her file and again the note from Dr. Mather's was faxed to Atlanta. At that time, she was working in baggage due to her exemption from working as a gate agent.

31.     The foregoing actions prompted plaintiff to file her initial PCHR Complaint in May 2015.

32.     Plaintiff returned to work in July 2014, shortly after filing her PCHR Complaint. Delta and plaintiff had reached a settlement which included an accommodation for her start time and back pay. Delta never actually accommodated her request for a late start time. Delta changed its shift times and plaintiff was able to work in accordance to the new shifts. Delta also never paid plaintiff her back pay as negotiated and promised.

33.     When plaintiff returned to work in July 2014 McGee, Moncur and Taylor were gone and Judy McMurtry was the new station manager.

34.     Upon her return to work, Ms. Abarry began to experience harassment at the hands of McMurtry.

35.     Oftentimes, McMurty was verbally abusive. She belittled plaintiff in front of her colleagues and customers and often undermined her work. Eventually, she moved to have plaintiff terminated due to her disability.

36.     Specifically, in September 2015, McMurtry stated that she needed all CSAs

to operate the jet bridge for all international flights, although easily half of the CSAs at the time were not trained to do so.

37.     Prior to this time, from 2008-2014 plaintiff was never required to operate the jet bridge. She was primarily assigned to the ticket counter. In fact, out of approximately 56 employees, almost half had never worked as a gate agent where operating the jet bridge would be required.

38.     On the rare occasions plaintiff was assigned as a gate agent after 2013, Delta provided an accommodation in the form of pairing her to work with a CSA that was able to operate the jet bridge.

39.     Operating the jet bridge is one of many possible duties of a CSA, but has never been an essential job function for a CSA.

40.     In fact, Sabine Wilson (Caucasian female), Amanda Roberts (Caucasian female) and Salvador Barrera (Hispanic male) were not required to work the jet bridge as an accommodation for their disabilities.

41.     When plaintiff brought to McMurtry's attention that she was not medically authorized to operate the jet bridge, McMurtry contacted human resources and complained that plaintiff was not operating the jet bridge.

42.     Due to McMurtry's complaint, Delta initiated an new accommodations review to address plaintiff's inability to operate the jet bridge due to her disability.

43.     In October 2015, while on unpaid leave pending the accommodations review, Ms. Abarry expressed to the Northeast regional manager, Stephanie Corvino, that she felt that McMurtry was targeting her for dismissal.

44.     During a conference call for the accommodations review, McMurty told the

committee that everyone needed to operate the jet bridge because there was a new international flight to London and due to staffing numbers, everyone needed to work. Since the time Ms. Abarry stopped working, many employees are still not trained at the gates. Additionally, McMurtry stated that all of the gates had been fitted with jet bridges, but in the last few months Ms. Abarry worked, there were planes that were unattached to the jet bridge. Even as of the date of the instant Complaint, there are still commuter flights-smaller planes- which land on the tarmac and passengers have to walk to the jet bridge.

45. In a letter dated November 5, 2015, plaintiff was notified by Greene that Delta could no longer accommodate her disability via assigning another agent with her to operate the jet bridge.

46. Instead, Delta offered plaintiff a continued unpaid leave of absence or participation in Delta's Alternative Position Assistance Program.

47. Defendant did not provide plaintiff with a reasonable accommodation.

48. Reassignment should only be considered when the accommodation within the current position would pose an undue hardship.

49. Delta has not asserted any undue hardship as to accommodating plaintiff within the CSA position.

50. Plaintiff's last day of work as a CSA was September 25, 2015.

51. In addition to Delta's failure to comply with the ADA, it also discriminated against plaintiff based on race by granting disabled non-Black employees the accommodation she sought, but denying her of the same.

## VI. STATEMENT OF CLAIMS

### COUNT I: FAILURE TO ACCOMMODATE PURSUANT TO THE ADA AND PHRA

8

52. The allegations set forth in Paragraphs 1-51 are reasserted and incorporated by reference herein.

53. Ms. Abarry is an employee and a qualified person with a disability pursuant to the ADA because she has a left visual field defect affecting her peripheral vision. This disability substantially limit one or more of her major life activities, including, but not limited to, seeing.

54. Ms. Abarry was qualified to perform her job as a customer service representative either with or without accommodation.

55. Ms. Abarry's disability was properly accommodated until November 5, 2015 when Delta decided that it would no longer accommodate her disability and she was forced to go out on unpaid disability leave.

56. Throughout the relevant time period, Delta knew that Ms. Abarry had a disability that required an accommodation.

57. Delta could have continued to provide such accommodations to Ms. Abarry without significant difficulty or expense.

58. Delta failed to engage in the interactive process in order to determine in good faith whether Ms. Abarry could perform her position with accommodations.

59. Delta's failure to engage in the interactive process and to accommodate Ms. Abarry in her position constitutes discrimination pursuant to the ADA solely because of Ms. Abarry's disability.

## COUNT II: FAILURE TO ACCOMMODATE UNDER
## THE PENNSYLVANIA HUMAN RELATIONS ACT

60. The allegations set forth in Paragraphs 1-59 are reasserted and incorporated by reference herein.

9

61. Delta's failure to engage in the interactive process and to accommodate Ms. Abarry in her position and/or to transfer her to a vacant position commensurate with her education, training, and experience, constitutes discrimination pursuant to the PHRA because of Ms. Abarry's non-job related handicap or disability, Delta's perception of that non-job related disability, and/or because of Ms. Abarry's record of impairment, 43 P.S. §955 (d).

## COUNT III: TITLE VII AND PHRA- DISPARATE TREATMENT

62. Plaintiff incorporates paragraphs 1-61 as if fully set forth herein.

63. Title VII of the Civil Rights Act of 1964 and 1991 and the Pennsylvania Human Relations Act and the regulations promulgated thereafter make it an unlawful employment practice for an employer to discriminate against an individual with respect to the terms and conditions or privileges of employment on the basis of race and disability.

64. Delta was an employer within the meaning of the above-referenced statutes.

65. Plaintiff was an employee within the meaning of the above-referenced statutes.

66. Plaintiff is disabled within the meaning of the above-referenced statutes.

67. Plaintiff is a member of a protected class as she is a Black female and disabled.

68. Plaintiff was qualified to work as a CSA because she had been working as such for ten (10) years.

69. Plaintiff suffered disparate treatment by the actions of Delta who intentionally discriminated against Plaintiff through its conduct which included, but is not limited to, failing to accommodate her disability based on her race.

70. Plaintiff was treated differently and less favorably than similarly-situated non-Black employees that requested disability accommodations.

71. Specifically, Sabine Wilson (Caucasian, female), Amanda Roberts (Caucasian

10

female) and Salvador Barrera (Hispanic male) were not assigned to operate the jet bridge as a reasonable accommodation due to their disabilities. This is a reasonable accommodation that could have and should have been afforded to the plaintiff.

72. Plaintiff suffered an adverse employment action Delta denied her a reasonable accommodation and offered unpaid disability leave for no other reason other than her race.

73. As a direct and proximate result of Defendant's discriminatory conduct plaintiff has suffered economic loss, including but not limited to, loss of earnings, future loss of earnings, loss of earning potential and loss of benefits.

74. As a direct and proximate result of Defendant's discriminatory conduct plaintiff has suffered a decrease in income and runs the risk of being permanently terminated losing all retirement benefits and emoluments.

75. As a direct and proximate result of Defendant's discriminatory conduct plaintiff has suffered emotional injuries, including, but not limited to, past and present pain and suffering, anxiety, depression and humiliation.

## COUNT IV: RETALIATION AGAINST PLAINTIFF PURSUANT TO THE AMERICANS WITH DISABILITIES ACT AND TITLE VII

76. The allegations set forth in Paragraphs 1-75 are reasserted and incorporated by reference herein.

77. Plaintiff engaged in protected activity pursuant to the ADA and Title VII by asserting rights guaranteed by both statutes, including her right to accommodation and her right to be treated in a non-discriminatory manner regardless of her disability, record of impairment, and/or Delta's perception thereof, and by filing a previous complaint with the PCHR.

78. Delta failed to meaningfully and timely provide plaintiff with a reasonable accommodation, and instead retaliated against her for seeking accommodations and for filing a

11

previous Complaint with the PCHR. Likewise, as set forth in this Complaint, it treated her adversely as a result of her requests for accommodation and his PCHR Complaint, by *inter alia,* 1) continuously failing to accommodate plaintiff, knowing that it would exacerbate her disabilities and/or prevent her from fulfilling her job duties; 2) placing her on an unpaid "inactive status" and 3) failing and/or refusing to engage in good faith in the interactive process.

79.     Delta's response to Ms. Abarry's request for accommodation and other protected conduct would have been materially adverse to a reasonable worker and could well have dissuaded a reasonable worker from making or supporting a request for accommodation or otherwise advocating for their rights under the ADA and Title VII.

80.     Defendant's actions were causally connected to Ms. Abarry's protected activity, and constitutes illegal retaliation in violation of Plaintiff's rights pursuant to Section V of the ADA and Section 2000e-3 of Title VII.

## COUNT V: RETALIATION AGAINST PLAINTIFF PURSUANT TO THE PENNSYLVANIA HUMAN RELATIONS ACT

81.     The allegations set forth in Paragraphs 1-80 are reasserted and incorporated by reference herein.

82.     Defendant's conduct as set forth in Count IV constitutes illegal retaliation in violation of Plaintiff's rights pursuant to the PHRA, 43 P.S. §955 (d).

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant in reference to all of the above Counts and an award of the following:

>     a.   Back pay and front pay, including benefits with pre-judgment interest;

>     b.   Compensatory damages, consequential damages and punitive damages;

12

c. Non-pecuniary damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and humiliation;

d. Attorney's fees and costs; and

e. Any other relief this Honorable Court deems appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by jury.

McCain Law, P.C.

Zakia E. Moore
Attorney I.D. No.: 86484
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 236-1086
*Attorney for Plaintiff*

Date: 10/27/2017

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

24th October, 2017
_____
Date

SAMIRA AANI ABARRY
PLAINTIFF

# EXHIBIT
# A

CITY OF PHILADELPHIA
COMMISSION ON HUMAN RELATIONS

SAMIRA ABARRY
Complainant

v.

PCHR CHARGE NO.
EEOC CHARGE NO.

DELTA AIRLINES
Respondent

## **COMPLAINT**

### **INTRODUCTION AND PARTIES**

1. This is my complaint of discrimination in employment.

2. This complaint involves actions that were taken against me. I live at the following address: 4235 Haverford Ave., #2F, Philadelphia, PA 19104.

3. This complaint involves actions that were taken by Delta Airlines; its address is Philadelphia International Airport, Terminal E, Philadelphia, PA 19153.

4. My relationship with the Respondent began on March 6, 2007 and continues through today. During this time, I have been a Customer Service Agent for the Respondent.

### **JURISDICTION**

5. The conduct took place within the city of Philadelphia at the following address: Philadelphia International Airport, Terminal E, Philadelphia, PA 19153.

6. The Respondent employs more than 15 people.

7. The Respondent is covered by the Philadelphia Fair Practices Ordinance.

8. The actions taken against me occurred less than 300 days ago.

### **COMPLAINT OF DISCRIMINATION**

#### **Count I: Discharged**

9. I am disabled. I have depression, insomnia and I had a stroke.

10. I was discharged by the Respondent on March 28, 2014.

1

SAMIRA ABARRY v. DELTA AIRLINES

11. I was discharged on the basis of my disability.

12. Since January 2013, Respondent's management team has been aware that the problems with my attendance are caused by my disability.

13. A change in my work schedule would permit me to improve my attendance and would be an accommodation for my disability. Employees bid on shift changes on a quarterly basis.

14. On March 7, 2014, I was notified by Dion Moncur, Station Leader, Sharon Lee, Performance Leader, and Theresa Taylor, Performance Leader, that I was suspended for up to two (2) weeks. I was suspended due to my attendance record.

15. On or around March 17, 2014, I spoke with Moncur about bidding on a schedule change and on vacation leave. Moncur assured me that I would be permitted to bid on a schedule change and on vacation leave while I was suspended.

16. Shortly after my suspension of March 7, 2014, I provided Respondent with my personal email address to send all documentation as my work email had been deactivated. I provided my personal email address because I did not want to miss any information on bidding for schedule changes.

17. On March 28, 2014, Moncur and Josh Jessup, Human Resources Representative, notified me that I was no longer suspended but was placed on "inactive status."

18. To date, I have not been given information as to when I am to return to work.

19. On April 2, 2014, the new bids for schedule changes were conducted and Respondent did not send me any information regarding this opportunity.

20. Before the scheduled bidding takes place, someone from Respondent's management team provides all the necessary information to participate in the bidding process.

21. The bidding information is disseminated to employees via electronic mail and posting in Respondent's common work areas.

22. Respondent sent me information to my personal email regarding bidding on vacation, but not about bidding on a schedule change.

23. Respondent did this intentionally because its management team knew that due to my disability, a schedule change would be a suitable accommodation.

24. With this action, Respondent denied me the opportunity to adjust my schedule in order to be able to return to work without any further attendance issues.

25. On April 30, 2014, I met with Raymond Moore, Mindy Fredrickson, Analise Green, all part of Respondent's management team and Jessup to discuss my return to work.

26. During this meeting, I requested that upon my return I be allowed to come in at a later time.

2

27. I also notified Respondent that the only accommodation necessary in regards to my tasks and responsibilities would be the accommodation already granted in May 2013, which prohibited me from operating the jet bridge.

28. In May 2013, when this accommodation was originally granted, I submitted all necessary medical documentation to Respondent.

29. During the April 30, 2014 meeting, Moore stated I had to submit medical documentation regarding this accommodation request and that Respondent's management team would have to review and decide on this matter.

30. I was left on "inactive status" and was not given a return date.

31. As I have not given any information or timeline as to when I would be allowed to return to work and have not been allowed to bid for a suitable schedule, in effect I was terminated.

32. Other employees of Respondent who have been suspended for infractions have been allowed to return to work shortly after their suspensions.

33. Other employees of Respondent who have had attendance issues have not been terminated.

## **REQUEST FOR RELIEF**

34. As a result of the Respondent's discrimination, I have suffered damages and request the Respondent compensate, reimburse, and provide any and all appropriate relief including but not limited to all pay and benefits I would have received had it not been for Respondents' illegal actions.

35. I wish to be awarded punitive damages as permitted by applicable law in an amount believed by the Commission to be appropriate to punish Respondents for their willful, deliberate, malicious, and outrageous conduct and to deter Respondents or other employers from engaging in such misconduct in the future.

36. I wish to be awarded the costs and expenses of this action as provided by applicable federal and state law.

37. In addition I request that the Respondent reinstate me to my position and provide back pay.

## **CONCLUSION**

38. I have not filed a complaint about the actions described here with the Pennsylvania Human Relations Commission.

39. I hereby authorize the Philadelphia Commission on Human Relations to serve this complaint upon the Respondent, investigate my complaint and the facts related thereto, and to file my complaint under the laws of the Pennsylvania Human Relations Commission and/or the U.S. Equal Employment Opportunity Commission, if applicable.

SAMIRA ABARRY v. DELTA AIRLINES

40. I request that my file be reviewed under all applicable laws enforced by the Commission to satisfy the procedural and administrative requirements for proceeding under federal or state laws should it become necessary.

I declare under penalty of perjury that all of the information that I have provided in this complaint is true, correct, and complete to the best of my knowledge. I acknowledge that false statements on this complaint are punishable by state law, 18 Pa. C.S. § 4904 (unsworn falsification to authorities).

_6th May 2014_
Date

_[signature]_
SAMIRA ABARRY

# EXHIBIT

# B

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **530-2016-00923** |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Samira Abarry** | | **01-29-1977** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4235 Haverford Ave., 2f, Phila, PA 19104** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **DELTA AIRLINES** | **15 - 100** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **International Airport (terminal E), Philadelphia, PA 19153** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☒ COLOR  ☐ SEX  ☒ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **05/27/2015** | **09/25/2015** |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**In 7/03/2014, I returned back to work to my previous job customer service agent (CSA) after being discharged in 2014. I filed a complaint of discrimination with the Pennsylvania Human Relations Commission in March of 2014 regarding this prior discharge.**

**In or about May 27, 2015, my cash drop was wrong because $100.00 was missing from the cash drop. Respondent eventually found it in my supervisor's envelope. The money normally goes in my envelope. When my supervisor signed off on my receipts/paperwork for that day, she must have grabbed the my envelope with my $100.00.**

**In the summer of 2015, Jerry Dyal ( white, Christian, U.S. born) confronted me over the change/money our supervisors give us at beginning of shift. She began to argue with me and she yelled at me and I yelled right back. I received a verbal counseling this incident because Ms. Dial**

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 12, 2016** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          *Charging Party Signature* | |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 530-2016-00923 |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

stated she felt uncomfortable with me because of the manner in which I spoke to her.

In or about summer of 2015, I was counseled regarding a complaint from a female junior agent, Dianna (black. Belize, Christian, about same color as me ) about me. ON this day she was doing ticketing and I was doing back drop. I had to call the Dianna at the help desk to assist a gentlemen with a split payment. I told her I started to help customer and told her that he needed to do a split payment. And she said that we don't do split payments, and I told her we do. She said, we don't call reservations for it. I said, that she had to call global not reservations. Dianna got someone to call the station manager over and this is when I was counseled regarding Dianna complaint about not liking the manner in which I spoke to her and about the incident with MS. Miller noted above. Sometime between April and August of 2015, Ms. Josephine Miller wrote a letter of complaint to management that I had forcibly taken carry on tags from her station and that she had an issue with me as a result of this. Mr. Roy, station manager, verbally counseled me about this incident. I told Mr. Roy I had not taken any tags from Ms. Miller station I merely asked if she could give me some at her station.

I was also counseled in or about summer of 2015 regarding an incident regarding Mr. Jones, a customer, who was going to England and I asked for his residence permit. He gave me an expired passport and he told me that he uses it all the time. I asked him for another document and I asked Rosalinda (black, Panamanian, Christian, about same or darker than me) , supervisor, to step in. He gave her what I asked for and he gave her the new passport. The station manager asked Mr. Jones if he wanted to file a complaint. The station manager said that he did not appreciate the way I talked to him and that I was trying to aggravate him by saying that I too have family in U.K.

Between July and August, I received another verbal counseling because Lydia Rosado (Puerto Rico, P.R. born, white. Christian ) complained that I crossed /walked over the bag scale. I and many others have done this. I was counseled about this violation of policy about crossing over scale. The supervisor at this time also stated that I take too long with the passengers and that I have had conflict with my co-workers in the past. I told her I have sped up my time with customers.

In September of 2015, I was told that the accommodation process would have to begin again for the accommodation I was receiving wherein another CSA would operate the jet bridge for me. in that two newI could no longer be accommodated because I don't operate the passenger jet bridge. I was told everybody needs to be doing the jet bridge. I had a stroke a couple years ago and it affects part of brain that affects vision. My vision is impaired on left side of the world. I told the officials at this meeting that I had medical documentation supporting the accommodation in my file and that I was granted this accommodation by Respondent in July 2014.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 12, 2016** *Date*      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 530-2016-00923 |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

October 23, 2015, I was told that I could not return to work because Respondent was no longer able to provide me with a reasonable accommodation of not having to operate the jet bridge in that two of the gates that did not have jet bridges now do have jet bridges and thus, the accommodation was no longer reasonable because additional staff was needed to operate these two additional bridges.

I don't know whether or not Lydia Rosado, Dianna or Ms. Miller, my co-workers were verbally counseled about the incidents noted above as I was.

No negative comments about my religion, national origin or race, or color have been made about me or to me to my knowledge.

I allege I have been discriminated against because my race, *(black)* and or national *(Ghana)* origin and or color and or and or religion in retaliation for filing a prior complaint with PHRC as noted above in 2014 in violation of title VII of the Civil Rights Act of 1964 when I was discharged. *(parents born in Ghana)*
→ *(muslim)*

I further allege Respondent violated the Americans with Disabilities Act of 1990, as amended when it failed to provide me with a reasonable accommodation of having someone assigned to do the jet bridges for me. When CSR's are assigned to the gate they have to operate the bridge about 4 times. This takes 2-3 minutes each time it has to be done. Also in violation of the ADA, I allege Respondent failed to offer me an open and available position that were open at the time or soon to be open. Respondent only told me that I had to go on the website and conduct a search on my own and apply for any positions for which I was qualified and I would have to compete for position with all other candidates. As result of this, I have been on a unpaid leave of absence but applied for and qualified for short term disability benefits. As a result of this my income has decreased and eventually this will run out and I may be separated from employment. Savina Wilson, Amanda Roberts, Salvador Barena was not required to work at the gates at all due a reasonable accommodation due to her disability and Salvador Barena. Lydia Rosado was also not doing the jet bridge at the time I was placed on leave in September and she left work for one week and was returned to work after week so she may have been accommodated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 12, 2016**<br><br>*Date*  ·  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT

# C

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Samira Abarry<br>4235 Haverford Ave.<br>2F<br>Philadelphia, PA 19104 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2016-00923 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Spencer H. Lewis, Jr.,
District Director

8/15/17
(Date Mailed)

Enclosures(s)

cc:  **Eve Rogers**
**Regional Human Resources Director**
**DELTA AIRLINES**
**908 Virginia Ave**
**4th Floor**
**Atlanta, GA 30354**